IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MIRANDA CHRISTINE LANGFORD,       )
                                  )
          Plaintiff,              )
                                  )
     v.                           )   Case No.: 3:18-cv-447-WC
                                  )
ANDREW SAUL,[1]                   )
Commissioner of Social Security,  )
                                  )
          Defendant.              )

## MEMORANDUM OPINION

## I.    INTRODUCTION

Miranda Christine Langford ("Langford" or "Plaintiff") filed an application for a

period of disability and disability insurance benefits on July 7, 2015, alleging disability

beginning on July 24, 2008. R. 23, 141–143.  The application was denied at the initial

administrative level. R. 100.  Plaintiff then requested and received a hearing before an

Administrative Law Judge ("ALJ") on March 10, 2017. R. 37, 74–75.  Following the

hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied

Plaintiff's request for review on March 12, 2018. R. 1–4, 20–22.  The ALJ's decision

consequently became the final decision of the Commissioner of Social Security

("Commissioner").[2]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party
pursuant to Fed. R. Civ. P. 25(d). *See also* §205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action
survives regardless of any change in the person occupying the office of Commissioner of Social Security).
[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-
296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

is now before the court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 15); Gov't's Consent to Jurisdiction (Doc. 14). After careful scrutiny of the record and the parties' briefs, and for the reasons herein explained, the Court REVERSES the Commissioner's decision and REMANDS the matter with instructions to the ALJ for an evaluation of Plaintiff's borderline age situation that complies with applicable regulations.

## II.    STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as

adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*." Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption

that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

## III.   STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a).   The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.   SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.   Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C).   However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).   Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.   See 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).   A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to
> result in death or which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1)    Is the person presently unemployed?

(2)    Is the person's impairment(s) severe?

(3)    Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4)    Is the person unable to perform his or her former occupation?

(5)    Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV.  ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-four years old on the date of the hearing before the ALJ. Doc. 11 at 1. Plaintiff left school after the seventh grade. R. 45. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since July 7, 2015, the application date[.]" R. 25. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "anxiety, hypothyroidism, and hypertension." R. 25. At Step Three, the

ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" R. 26. Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform light work [. . .] except the claimant will walk or stand only four hours of the workday, with a one to two-minute rest for each hour of standing or walking. She will lift or carry no more than 10 pounds. She will occasionally balance, bend, stoop, or crouch. She will never kneel, crawl, climb stairs or ramps, climb ladders/ropes/scaffolds, and never be exposed to unprotected heights or moving machine parts. She will be allowed to use a cane, as needed. She will be able to perform simple, routine tasks. The claimant will have occasional contact with co-workers and the general public.

R. 27. At Step Four, having consulted with a VE, the ALJ concluded that Plaintiff "has no past relevant work." R. 32. The ALJ next concluded, at Step Five, that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 32. Based upon the testimony of the VE, the ALJ identified the following as representative occupations: "mail clerk," "ticket seller," and "garment sorter." R. 32–33. Accordingly, the ALJ concluded that Plaintiff "has not been under a disability [. . .] since July 5, 2015, the date the application was filed," through the date of this decision. R. 33.

## V.    PLAINTIFF'S CLAIMS

Plaintiff presents two issues for the Court to consider in its review of the Commissioner's decision: (1) "Whether the ALJ properly evaluated the Claimant's impairments on her ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule as required by SSR 96-8p;" and (2) "Whether the ALJ erred in mechanically applying the age categories and

finding the Claimant to be closely approaching advanced age rather than advanced age." Doc. 11 at 5.

## VI.    DISCUSSION

Although Plaintiff raises two issues on appeal, since the Court's decision related to the ALJ's consideration of the grids issue is dispositive, the Court confines its review to the application of the age criteria.

Plaintiff argues that the "ALJ improperly failed to recognize that the Claimant would shortly be of advanced age under governing regulations and her finding that the Claimant could perform a reduced range of light work was questionable in view of the Claimant's residual functional capacity." Doc. 11 at 8.  Langford was born on June 27, 1962.  Thus, she was 46 years old (defined as a younger individual age; 18–49) on the alleged onset date, 53 years old (defined as closely approaching advanced age; 50–54) on the date of the application, and 54 years old at the time of the hearing before the ALJ.  R. 32; Doc. 11 at 7.  However, on the date of the hearing, Langford was three months short of her next birthday, on which she would turn 55 years old (defined as advanced age; 55 or older). Doc. 11 at 7.  In her opinion, the ALJ noted "[t]he claimant was born on June 27, 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged onset date. She subsequently changed age category to closely approaching advanced age (20 CFR 416.963) on the date the application was filed." R. 32.  Plaintiff asserts that the ALJ failed to make a factual determination as to the appropriate age

category, and this failure amounts to "mechanically apply[ing] the age categories, an action prohibited by 20 CFR 404.1563(a)." Doc. 11 at 7.

The Government, on the other hand, avers that the ALJ "did not rely exclusively on the grids and the VE's testimony provides substantial evidence to support the ALJ's finding that Plaintiff could perform other work and was not disabled." Doc. 12 at 6–7. Specifically, they argue that after the ALJ looked at the grids to determine if it might direct a conclusion of disabled, the ALJ found that Langford could "perform light work, she was person closely approaching advanced age (age 50–54), she had a limited education and able to communicate in English, she had no past relevant work, and transferability of skills was not material." Doc. 12 at 7. The ALJ further "recognized that Plaintiff had additional exertional and non-exertional limitations that precluded using the grids to direct a finding of disabled or not disabled, and she could use the grids only as a framework for her decision." *Id.* Next, the Government argues that, assuming the Court decides that this is a borderline age situation, Langford should not be mechanically placed in the older age category, and that she failed to proffer "evidence of additional vocational adversities that would require application of the older age category." Doc. 12 at 9–10.

The Code of Federal Regulations defines "age" as the claimant's "chronological age." 20 C.F.R. § 404.1563(a). In determining if a claimant is disabled under § 404.1520(g)(1), the Commissioner "will" consider a claimant's "chronological age in combination with [the claimant's] residual functional capacity, education, and work

experience." *Id.*  In determining the extent to which age affects, the claimant's ability to adjust to other work, the Commissioner will "consider advancing age to be an increasingly limiting factor in the person's ability to make such an adjustment." *Id.*  The regulations state that if a claimant is "closely approaching advanced age (age 50–54), [the Commissioner] will consider that [the claimant's] age along with a severe impairment(s) and limited work experience may seriously affect [the claimant's] ability to adjust to other work"  and that the Commissioner considers that "at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work." 20 C.F.R. § 404.1563(d)–(e) (citing § 404.1568(d)(4)).  The Commissioner will use the age category that applies at the relevant time period; however, the age categories will not be applied mechanically in borderline situations. 20 C.F.R. § 404.1563(b)  If the claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." *Id.*

In the Hearings, Appeals, and Litigation Law Manual ("HALLEX") published by the Social Security Administration's Office of Disability Adjudication and Review ("ODA"), which contains instructions and guiding principles used by employees of ODA, including the ALJs and Appeals Council, in processing and adjudicating claims, the ODA provides a two-part test in interpreting a borderline age situation.  In Section II-5-3-2, the HALLEX provides:

To identify borderline age situations when making disability determinations, adjudicators will apply a two-part test:

(1) Determine whether the claimant's age is within a few days or a few months of a higher age category.

(2) If so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled."

If the answer to one or both is "no," a borderline age situation either does not exist or would not affect the outcome. The adjudicator will then use the claimant's chronological age.

If the answer to both is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age. (Use of the higher age category is not automatic.)

Appeals Council Interpretation II–5–302(A) (effective Nov. 2, 1993). Section II-5-3-2 also notes that the guidelines should be considered "whenever the age category changes within a few months after the alleged onset date, the date last insured (or the prescribed period), or the date of the ALJ's decision." *Id.*; *see Crook v. Barnhart*, 244 F. Supp. 2d 1281, 1283 (N.D. Ala. 2003) (citing Appeals Council Interpretation II–5–302 (effective March 16, 1979) ("Generally, establishing an onset date up to six months prior to attainment of the specified age would be reasonable.")).[3] However, the claimant still

---

[3] Although "[t]here is no precise definition of a borderline situation in the statutes, regulations, or binding case authority," the courts have generally found that where the decision was issued within six months of the claimant's birthday, a borderline age situation exists. *McShane v. Comm'r of Soc. Sec.*, No. 8:15-cv-677, 2016 WL 836690, at *4 (M.D. Fla. Mar. 4, 2016); *see also Pettway v. Astrue*, No. CIV.A 10-127-C, 2010 WL 3842365, at *3–5 (S.D. Ala. Sept. 27, 2010) (citing *Cox v. Apfel*, No. 98–7039, 1998 WL 864118, at *4 (10th Cir. Dec. 14, 1998) (*within six months* borderline); *Daniels v. Apfel*, 154 F.3d 1129, 1132–33 (10th Cir. 1998) (*65 days* borderline); *Kane v. Heckler*, 776 F.2d 1130, 1132–33 (3d Cir. 1985) (*48 days* borderline); *Freundt v. Massanari*, No. 00 C 4456, 2001 WL 1356146, at *17–*20 (N.D. Ill. Nov. 2, 2001) (*six months and 12 days* borderline); *Graham v. Massanari*, No. 00 C 4669, 2001 WL 527326, at *8 (N.D. Ill. May 9, 2001) (*four and one-half months* borderline); *France v. Apfel*, 87 F. Supp. 2d 484, 491–92 (D. Md. 2000) (*five months* borderline); *Russell*, 20 F. Supp. 2d at 1134–36 (*92*

must justify the use of the higher age category; otherwise the claimant's chronological age will be used, "even when the time period is only a few days." *Id.*

Here, Langford was born on June 27, 1962, and changed age categories from "younger individual" at the time of her alleged onset date to "closely approaching advanced age" by the date that the application was filed. R. 32. The ALJ issued her decision on May 24, 2017, at which time Langford was approaching advanced age. Although Plaintiff argues that at the time of the hearing she was 3.5 months short of her 55th birthday, the relevant inquiry is her age at the time of the ALJ's decision. *See Crook*, 244 F. Supp. 2d at 1283 (quoting *Russell v. Commissioner of Social Security,* 20 F. Supp. 2d 1133 (W.D. Mich. 1998) ("For purposes of determining age under the grids, 'the claimant's age as of the time of the **decision** governs.'") (emphasis in original)); Appeals Council Interpretation II–5–302(A) (Noting that the guidelines should be considered "whenever the age category changes within a few months after the alleged onset date, the date last insured (or the prescribed period), or **the date of the ALJ's decision**.") (emphasis added). Langford was only one month short of her 55th birthday on the date of the ALJ's decision, and thus, a borderline age situation clearly existed.

At step five of the ALJ's decision, the ALJ classified Langford as closely approaching advanced age, based on her age on the date the application was filed. R. 32 ("The claimant was born on June 27, 1962 and was 46 years old, which is defined as a

---

*days* borderline); *Leyba v. Chater,* 983 F. Supp. 1048, 1051 (D.N.M. 1996) (***three and one-half months*** borderline); *Davis v. Shalala,* 883 F. Supp. 828, 838–39 (E.D.N.Y. 1995) (***three months*** borderline); *Hill v. Sullivan,* 769 F. Supp. 467, 470–71 (W.D.N.Y. 1991) (***three months and two days*** borderline); *Chester v. Heckler,* 610 F. Supp. 533, 535 (S.D. Fla. 1985) (***one month*** borderline); and *Roush v. Heckler,* 632 F.

younger individual age 18-49, on the alleged onset date. She subsequently changed age category to closely approaching advanced age (20 CFR 416.963) on the date the application was filed."). The ALJ failed to mention Langford's age at any other point in the decision, and she never acknowledged that this was a borderline age situation with respect to being advanced age or provided any analysis for the court to determine if she even considered whether Langford should be classified as "closely approaching advanced age" or "advanced age." It is clear from the record that the ALJ based her decision on Langford's age at the time of her application, not the time of the ALJ's decision.[4]

While the ALJ has no duty to fully explain her use of a claimant's chronological age, the ALJ is certainly required to identify a borderline age situation where it exists and provide an analysis sufficient enough for the Court to deduce that it was at least part of the ALJ's consideration. *See* Appeals Council Interpretation II–5–302(A) ("The adjudicator need not explain his or her use of the claimant's chronological age."); *but see Bell v. Colvin*, No. CV 115-090, 2016 WL 3906537, at *3–4 (S.D. Ga. June 21, 2016), *report and recommendation adopted*, No. CV 115-090, 2016 WL 3892431 (S.D. Ga. July 14, 2016) ("The ALJ never acknowledged this is a borderline case, and the decision contains no indication this is a borderline case or analysis on whether it would be appropriate to classify [the plaintiff] as closely approaching advanced age."). The Court finds that the ALJ failed to use the Plaintiff's age at the time of her decision. As a result,

---

Supp. 710, 711–12 (S.D. Ohio 1984) (*six months* borderline).

[4] "'The fact that a claimant who is unable to engage in such activity at the time of the decision may have been able to do so at some point in the past goes to the question of the onset date, not the question of disability.'" *Crook*, 244 F. Supp. 2d at 1283 (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d

she wholly failed to recognize that this was a borderline age situation between "closely approaching advanced age" or "advanced age" at the time of the decision, but rather noted the Plaintiff's movement from the "young person" age category to the "closely approaching advanced age" category from the onset date to the application date.

The Court is hard pressed to find that this omission is simply harmless error where the combination of Langford's age at the time of the decision, residual functional capacity, education, and work experience, as set forth by the ALJ, would clearly present a borderline age situation that could result in a finding of disabled under the grids. *See* Rule 202.01, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (claimant of advanced age, limited to light work, with limited or less education, and unskilled or no work skills is disabled). Although the ALJ may still find that substantial evidence exists to not exclusively rely on the grids where additional limitations are present, the ALJ must at a minimum recognize Plaintiff's correct age at the applicable time period and review the correct rule under 20 C.F.R. Pt. 404, Subpt. P, App. 2. To the contrary, this Court finds this error to be prejudicial because the grids direct a finding of "disabled" for a person of advanced age, along with all of the other limitations identified by the ALJ.

As a result, the Government's arguments are unavailing. First, the Government argues that after the ALJ looked at the grids to determine if they might direct a conclusion, the ALJ then found that Langford could "perform light work, she was [a] person closely approaching advanced age (age 50-54), she had a limited education and

777, 781 (6th Cir.1987)).

[is] able to communicate in English, she had no past relevant work, and transferability of skills was not material." Doc. 12 at 7. Next, the ALJ "recognized that Plaintiff had additional exertional and non-exertional limitations that precluded using the grids to direct a finding of disabled or not disabled, and she could use the grids only as a framework for her decision." Doc. 12 at 7. While the Court agrees with the Government's claim, as previously discussed, the ALJ erred early on in the analysis by failing to recognize Plaintiff's age during the relevant period and review the correct rule under the grids to make an accurate determination. Based on the ALJ's opinion, it is clear the ALJ reviewed the Langford's age and grids applicable to her based on her age at the time the application was filed, and not at the time of the decision, and wholly failed to recognize the borderline age situation that had arisen at that time. Had the ALJ done so, the Government's argument would hold more weight, and the Court would certainly have recognized the ALJ's ability to use the grids as a framework in the presence of additional exertional or non-exertional limitations.

Next, the Government argues that, assuming the Court decides that this is a borderline age situation, Langford should not be mechanically placed in the older age category, and that she failed to proffer "evidence of additional vocational adversities that would require application of the older age category." Doc. 12 at 9–10. This argument has already failed within this circuit under the present circumstances. In *Bell v. Colvin*, the court rejected the Government's attempt to shift the burden:

> The Court rejects [. . .] the Commissioner's attempt to relieve the ALJ of her burden to show she made an individualized determination about the

proper age category. "[T]here must be, at a minimum, some showing that the ALJ considered the overall factors in the claimant's case, including age and other vocational factors, before applying a particular age category." *McShane*, 2016 WL 836690, at *5. That did not happen here, and therefore, the case should be reversed and remanded. The Commissioner does not refute that had Plaintiff been classified as a person approaching advanced age, the Grids direct, based also on an RFC for sedentary work, education and non-transferability, a finding of "disabled." Rule 201.10, Pt. 404, Subpt. P, App. 2. Rather she faults Plaintiff for failing to offer any reason "why he should have been mechanically placed in the older age category." Comm'r's' Br., p. 14. But that misstates the burden that the ALJ must consider whether to use an older age category and make some showing that she considered the overall factors in the case, including age. 20 C.F.R. § 416.963(b). Here, in apparent contravention of the rule that age must be considered throughout the period for which disability must be determined, *id.*, the ALJ appears to have considered only Plaintiff's age at the application date.

*Bell*, 2016 WL 3906537, at *4. Similar to the facts in *Bell*, here, the Government does not deny that a correct application of the grids in this clear borderline age situation would direct a finding of "disabled" based on Langford's age, RFC for less than light work, limited or less education, and unskilled or no work skills, but rather claims the burden is on Langford to show "evidence of additional vocational adversities." As held in *Bell*, this Court also finds that this argument improperly shifts the ALJ's burden onto the claimant under the facts presented here, and it is just as clear here as it was in *Bell* that the ALJ only considered Langford's age at the time of the application date.

The Government relies on *Miller v. Commissioner of Social Security*, which certainly provides an insightful discussion on mechanistically applying the grids; however, the facts of the present case diverge. 241 F. App'x 631, 632 (11th Cir. 2007). In *Miller*, although the ALJ did not explicitly refer to a "borderline age situation," the

ALJ recognized that the plaintiff was 54 years old and a "person closely approaching advanced age," a high school graduate, and had work skills that were transferrable to other semiskilled jobs. *Id.* at *1–2. The ALJ noted that even if the plaintiff "were able to perform a full range of light work, a finding of 'not disabled' would be required;" however, the ALJ found that the plaintiff's "ability to perform a full range of light work was impeded by his additional exertional and non-exertional limitations." *Id.* at *2.

Aside from the fact that the ALJ recognized that the plaintiff was 54 years old, another distinction is that the ALJ's finding that his work skills were transferrable to other semiskilled work played an important role in the ALJ's "not disabled" finding. In *Miller*, had the ALJ designated the plaintiff as advanced age, all other factors remaining constant, the plaintiff would still be considered "not disabled" under the grids. *Id.* ("Under Rule 202.06, a person of advanced age, who is a high school graduate or more, where that educational level does not provide for direct entry into skilled work, and has skilled or semi-skilled skills that are not transferable is categorized as "disabled." 20 C.F.R. pt. 404, subpt. P, app. 2, table no. 2, § 202.06. However, a person with those same characteristics, except that his skills are transferable, is categorized as "not disabled." *Id.* at § 202.07."). The ALJ in *Miller* had found that the plaintiff's skill set was transferrable to other semiskilled jobs. Thus, the court held that substantial evidence supported the ALJ's finding that the plaintiff was "a person closely approaching advanced age," and to refute such a finding the plaintiff was required to "establish that his ability to adapt [to a new work environment] was less than the level established under the grids for persons his

age, [proffering] evidence tending to establish that fact." *Id.* at 636. This is not the case in the instant matter. As stated, it is not disputed that had the ALJ used Langford's correct age and determined that she presented a borderline age situation, all other factors remaining constant, Lanford would be considered "disabled" under the grids. However, the Court does not have sufficient information to determine if substantial evidence supports the ALJ's finding due to the fact that she improperly used Langford's age as of the date of the application.

For the reasons set forth above, the ALJ's failure to consider the borderline age situation that existed at the time of the ALJ's decision constitutes reversible error. However, the Court's decision to remand this case "should in no way be construed as a comment as to which age category should be applied or whether Plaintiff is disabled as defined by the Social Security Act." *Bell*, 2016 WL 3906537, at *4. The case is being remanded to the ALJ for consideration of all the factors in Plaintiff's case and proper consideration of Plaintiff's age at the applicable point in time.

## VII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is not supported by substantial evidence or a proper application of the law. Accordingly, this case will be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this opinion. A separate order will be entered.

Plaintiff is cautioned, however, that this Memorandum Opinion does not suggest Plaintiff is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act.  *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).  A separate judgment will issue.

DONE this the 10th day of July, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE